## Todd *v.* State of Indiana.

[No. 28,426. Filed October 7, 1948. Rehearing denied November 9, 1948.]

*Edward P. Elsner,* of Seymour, and *C. A. Huff, O. B. Hanger,* and *Ralph D. Todd,* all of Indianapolis, attorneys for appellant.

*Cleon H. Foust,* Attorney General, *Frank E. Coughlin,* First Deputy Attorney General, and *Merl M. Wall,* Deputy Attorney General.

STARR, J.—The appellant, Ralph D. Todd, was prosecuted by affidavit in two counts; the first count charged automobile banditry; the second count uttering a forged instrument. The second count grew out of the same transaction involved in the first count. To this affidavit the appellant plead not guilty. The trial was had before a jury which resulted in a verdict of guilty on each count; that he be imprisoned for ten years on the first count, and fined in the sum of ten dollars on the second count. The jury found that appellant was thirty-six years of age. Thereupon, the trial court sentenced the appellant on the first count to be imprisoned in the Indiana State Prison for a term of ten years, and on the second count imprisoned for not less than two or more than fourteen years and fined ten dollars and costs, and ordered the said sentences should be served concurrently. It is from this judgment this appeal is taken.

The record discloses that on October 7, 1947, the

appellant was arraigned and plead not guilty; that at that time the cause was set for trial for November 3, 1947. The record further discloses that on said last mentioned date the appellee, by the prosecuting attorney, answered in open court that it was ready for trial; that the appellant also at said time appeared in person and elected to represent himself in this case without the aid of counsel, and requested a trial by jury and announced that he was ready for trial. Thereupon, a jury was impaneled and the cause submitted for trial which resulted in the verdict and sentence as above indicated.

On December 3, 1947, appellant filed his motion for a new trial and assigned as causes therefor, that the verdict was contrary to law; that the verdict was not supported by sufficient evidence, and that the appellant was prevented from having a fair trial by the following errors of the court, overruling the appellant's motion for a continuance and postponement of his trial; and finally, in permitting appellant's case to be tried without appointing an attorney to represent and defend him.

On January 12, 1948, as shown by appellant's bill of exceptions No. 2, the appellant filed the affidavit of one of his attorneys, Mr. O. B. Hanger, in support of his motion for a new trial. The substance of this affidavit is that this attorney filed the appellant's motion for a new trial, and at the time he so filed the same, he inquired of the trial judge whether or not said appellant had requested a continuance or postponement of his case on the day of his trial, on the grounds that the appellant did not have counsel employed to represent him, and thereupon, said judge had answered in the affirmative, and further informed the affiant that he had overruled and denied said request on the grounds

that the appellant had had ample time to employ counsel; that he further inquired of the court at said time, whether the appellant had requested the court to appoint counsel to represent him, and the court again answered in the affirmative, and stated that he had denied the request on the grounds that the court "did not intend for the taxpayers of Jackson County to employ counsel to represent said defendant"; and finally, that the court's record failed to show such requests so made by appellant in open court or the court's rulings that were made on said requests.

Before the motion for a new trial was ruled on, the appellant filed his written motion for a nunc pro tunc entry showing that the appellant on trial day had moved for a continuance and also, for the appointment of an attorney to represent and defend him as a poor person and the ruling on each request denying the same. This motion was not verified and no evidence was offered by appellant in support of it. The record discloses that this motion was overruled and then the motion for a new trial was also overruled.

The only alleged errors properly assigned by appellant are the overruling of his motion for a new trial, and the overruling of his said motion for a nunc pro tunc entry which we will consider in their order.

Appellant contends that the verdict is contrary to law for the reason that the jury attempted to assess his punishment on the second count by a fine in the sum of ten dollars. He has failed to raise any question on this proposition for the reason that he did not object to the verdict at the time it was returned by the jury, nor did he, nor could he, under these circumstances, move for a venire de novo. *Limeberry* v. *State* (1945), 223 Ind. 622, 63 N. E. 2d 697. Nor has he made any motion to modify the judgment

herein, as was the procedure in the case last above cited. Due to the importance of this case, however, we desire to point out that it was not the duty of the jury to assess the punishment on this count as § 10-2102 Burns' 1933, 1942 Replacement, being the statute defining the offense of which he is charged in this count, fixes the punishment therefor by an indeterminate sentence. Under these circumstances it is the court and not the jury which pronounces the sentence, § 9-1821 Burns' 1933, 1942 Replacement, and the judge fixes not only the punishment as to imprisonment, but all other punishment as prescribed by this section of the criminal code for the violation of which the defendant is charged. *Frey* v. *State* (1925), 196 Ind. 359, 147 N. E. 279. It is true the last case above cited was not construing said § 9-1821, but the section then in effect which it was construing, insofar as the question now before us is concerned, was identical with the present section. See also *Miller* v. *The State* (1898), 149 Ind. 607, 49 N. E. 894. That portion of the verdict which fixes appellant's punishment on the second count is mere surplusage.

Appellant also insists in his motion for a new trial that the verdict is not sustained by sufficient evidence. He has wholly failed to point out in his brief any such failure. We have, however, examined the evidence and in our opinion the same is ample to sustain the conviction.

Other reasons contained in the motion for a new trial are based on the theory that the appellant had moved for a continuance and also for counsel. The record does not disclose that such motions were made or ruled upon by the trial court, in fact, as above indicated, the record shows to the contrary.

The above described affidavit in support of the

motion for a new trial is of no force or effect. It is virtually an attempt to dispute the record as to matters which are properly part of the record and which cover events occurring during the trial merely by a hearsay statement of the affiant. On matters of record proper courts speak only through the record. Other matters and events occurring during the trial in the presence of the court and claimed to be indiscretions and misconduct of the judge may be brought to the attention of this court only by objection made to the trial court at the time and then made a part of the record by a special bill of exceptions. See the majority opinion in *Hoy* v. *State* (1947), 225 Ind. 428, 75 N. E. 2d 915.

Lastly, in this motion for a new trial, it is contended that the court erred in permitting appellant's case to be tried without appointing an attorney to represent and defend him. Appellant had a perfect right to intelligently waive his constitutional right to counsel, and to represent himself without counsel if he so desired. It was the duty of the court at the time that appellant entered his plea to fully advise him as to his rights and as to the consequence of his plea. Among other things, it was the duty of the court to explain to the appellant that he was entitled to counsel step by step throughout the proceedings, *Batchelor* v. *State* (1920), 189 Ind. 69, 125 N. E. 773, and if he was a pauper to offer, and if he so desired, to provide him with adequate counsel. *Wilson* v. *State* (1943), 222 Ind. 63, 51 N. E. 2d 848. Unlike the case of *Batchelor* v. *State, supra,* there is nothing in the record which even tends to show whether or not this advice was given, nor is there anything in the record to show that appellant was a pauper and entitled to counsel. We must presume that the trial

court did its duty in the absence of any showing whatsoever on these points. Gavit's Indiana Pleading and Practice § 520. The record shows that appellant elected to represent himself, and there is nothing to indicate that he did not make this election intelligently.

No question can be raised as to the ruling of the trial court denying appellant's motion for a nunc pro tunc entry. Appellant seems to be under the impression that the above mentioned affidavit had to be considered and deemed conclusive by the trial court.

Although the record does not disclose that this affidavit was offered in support of appellant's motion, or that it was all the evidence considered upon the subject, yet, if we admit that this affidavit was and should have been considered by the court in ruling on this motion, we cannot conclude that it would be conclusive whatever its contents. The overruling of the motion amounted to a denial by the court that appellant had moved for counsel and a continuance, and there was no duty to file a counter affidavit to that effect. Where affidavits have been filed opposing a pending motion for a nunc pro tunc entry which affidavits are not contradicted, the court is not bound by the statements in such affidavits. Under these circumstances "uncontradicted evidence of the party given to establish a fact of this character cannot preclude the rightful power of the court to find otherwise by resorting to its own knowledge." *Moerecke* v. *Bryan* (1915), 183 Ind. 591, 596, 108 N. E. 948. This principle is broad enough to include the present case where the uncontradicted affidavit is in support of the motion.

Judgment Affirmed.

Gilkison, J. and Emmert, J. dissent.

NOTE.—Majority Opinion reported in 81 N. E. 2d 530. Minority Opinion reported in 81 N. E. 2d 784.

## DISSENTING OPINION.

GILKISON, J.—I dissent from the opinion in this case for the reason that I think the entire proceeding clearly demonstrates that the defendant has been denied his constitutional rights, and the judgment is therefore void. The record discloses the following proceedings: The intrinsic record of the trial court shows that the affidavit against appellant was filed in that court on September 22, 1947, at which time a warrant was issued for his arrest. On October 7, following, he was arraigned in open court, entered a plea of not guilty, his bond was fixed at $3000, and his trial date was fixed by the court for November 3, 1947. This was the first appearance of the appellant in the cause and this is all the record made in the cause on that date. No further record was made in the cause until November 3, 1947, when the following record was made, to-wit:

> "The date of trial being at hand,—Comes also the state of Indiana by John M. Lewis, Prosecuting Attorney and announces ready for trial as to defendant, Ralph D. Todd, on first and second counts of affidavit; comes also the defendant, Ralph D. Todd, in person and shows to the court that he elects to represent himself in this cause, without the aid of counsel, and requests a trial by jury and announces ready for trial."

The record is silent as to whether defendant was free under a recognizance bond, or whether he had been in jail from the date of his arrest. However, if he had been under bond, the record would so show. Therefore, we may presume he was detained in jail awaiting trial. The record contains no copy of the *showing, election* and *request* which it says was made by defendant, and we are therefore compelled to indulge the presumption that something was said at that

time on the subject of counsel for defendant and possibly about a continuance but it was wholly oral and no record was made thereof by the trial court.

On December 3, 1947, within the time provided by law, attorneys, O. B. Hanger and E. P. Elsner appeared for defendant, and filed a motion for new trial, which omitting caption and signature is as follows:

"The defendant, Ralph Todd, in the above entitled cause, shows to the Court that there are manifest irregularities and error in the proceedings, rulings of the Court, verdict of the jury and the judgment of the Court rendered thereon, in this cause, on November 3, 1947, on each of the following grounds:

"1. That the verdict of the jury is contrary to law.

"2. That the verdict of the jury is contrary to the evidence.

"3. That the verdict of the jury is not supported by sufficient evidence.

"4. The Court committed prejudicial error in failing to grant defendant's request for a continuance or postponement of the trial of his case, on the grounds that his attorney had withdrawn his appearance; and that he needed additional time to employ counsel to represent him.

"5. The Court committed prejudicial error in permitting defendant's case to be tried to the jury without appointing an attorney to represent and defend said defendant during the aforesaid trial.

"6. The Court erred in permitting the trial of said defendant to proceed without representation of legal counsel.

"7. The Court erred in submitting defendant's case to the jury without first appointing an attorney to represent and defend said defendant.

"8. That said defendant was denied his constitutional rights by the Court's rulings in the proceedings, hereinbefore stated, made during the course of the trial of said defendant.

"WHEREFORE, defendant prays that a new trial of this cause be granted.

"MEMORANDUM:

"The law is well established in Indiana that anyone who is accused of a crime is entitled to have legal counsel to represent him in the trial of his case. Our Courts have held that when one is so accused and is without funds with which to employ counsel, it is the duty of the Court to appoint a competent and qualified attorney to represent such accused. The Courts have further held it is reversible error for a Court to fail or refuse to appoint an attorney for one accused of a crime and is without funds to employ counsel.

"Our Courts have further held that is reversible error for a Court to deny a motion for postponement or continuance of a trial, when an attorney of record withdraws his appearance, and another attorney is employed by the accused to represent him, but not in time for the second attorney to prepare proper defense for the accused.

"The facts in the instant case are undisputed that defendant's attorney withdrew his appearance, and said defendant so informed the Court on the day of the trial and requested the court to continue or postpone the trial of his case, until he could employ another attorney, or that the Court appoint an attorney to represent him. All of which the Court denied and forced the defendant to submit his case to the jury without any legal representation. This, in effect, denied said defendant of his constitutional rights (217 Ind. 493)."

The court then required appellant to file a brief in support of his motion for new trial on or before January 5, 1948. On January 5, 1948, an extensive brief with authorities was filed. At the same time and for the same reasons as given in the motion for new trial except causes 1, 2, and 3 thereof, a motion for a nunc pro tunc entry was filed and presented.

On January 12, 1948, attorney, O. B. Hanger, filed his own affidavit in support of the motion for new

trial, which omitting caption, signature and verification is as follows:

"O. B. Hanger, being first duly sworn upon his oath, says:

"That he is one of the attorneys of record for said defendant in the above entitled cause; that he personally filed said defendant's motion for a new trial in open court with the Judge of said Jackson Circuit Court; that at the time he filed the aforesaid motion for a new trial, he inquired of the Judge of the Court whether or not said defendant, Ralph Todd, had requested, on the day of his trial, the Court to continue or postpone his case on the grounds said defendant did not have counsel employed to represent him and the Judge of the Court answered in the affirmative; the Court further informed him that he had overruled or denied said defendant's request, as aforesaid, on the grounds that said defendant had had ample time to employ counsel; that he further inquired of the Court, if said defendant did not ask or request the Court to appoint counsel to represent him and the Court again answered in the affirmative, but overruled or denied the request on the grounds that the Court did not intend for the taxpayers of Jackson County to employ counsel to represent said defendant.

"The foregoing statement is made for the purpose of showing that the Judge of the Jackson Circuit Court at all times had personal knowledge of defendant's requests and rulings that were made thereon, although said Court's records failed to disclose that any such requests were made by said defendant in open Court, nor does its records show the Court's rulings that were made on said defendant's requests.

"Further affiant saith not."

On the same date the motion for nunc pro tunc entry and the motion for new trial were overruled.

The bill of exceptions shows that to prove the charge the prosecuting attorney produced eleven witnesses, whom he asked 307 questions. On cross-examination

the defendant asked these witnesses 15 questions. The defendant made but one objection to a question during the trial, the reason given for the objection being meaningless, and the court overruled it. Had a proper reason been given the objection might have been sustained. At one time during the trial the prosecuting attorney (to his credit be it said) warned a witness against giving incompetent evidence against the defendant.

At the conclusion of the state's evidence the judge said: "Mr. Todd, do you have any witnesses, or do you want to testify?" Mr. Todd answered "No Sir". This statement, the 15 inane cross-examination questions, and a like inane objection constituted defendant's entire participation in his trial. So far as shown, defendant had no opportunity to examine the affidavit upon which he was being tried, and no opportunity to consult with or have witnesses subpoenaed in his defense. There is nothing indicating that appellant would have comprehended the meaning of the affidavit if he had seen it.

Confronted with this factual situation affirmatively shown by the record I am wholly unable to agree with statements in the opinion that "we must presume that the trial court did its duty" and that prior to the trial it explained "to the appellant that he was entitled to counsel throughout the proceedings . . . and if he was a pauper to offer, and if he so desired, to provide him with adequate counsel," in the absence of any showing whatever that any such explanation or offer was ever made. Where, as in this case, a simple and uneducated person is detained in jail without counsel either before or after plea or at his trial and is compelled to go to trial without any preparation whatever for his defense, he is thereby clearly denied

his rights under both the state and federal constitutions. In such a situation the trial court is called upon *sua sponte* to see that the defendant has adequate and competent counsel, and that he and his counsel have ample time to prepare for the trial. On this proposition the record of the trial court is always open for inspection and consideration, and it may not be materially aided by presumptions contrary or in addition to record facts. *Hendryx* v. *State* (1891), 130 Ind. 265, 29 N. E. 1131. *East* v. *State* (1929), 89 Ind. App. 701, 704, 705, 168 N. E. 28. *Cassidy* v. *State* (1929), 201 Ind. 311, 319, 168 N. E. 18. *Wilson* v. *State* (1943), 222 Ind. 63, 51 N. E. 848. *Powell* v. *Alabama*, 287 U. S. 45, 77 L. Ed. 158, 84 A. L. R. 527, 540, 541. The constitutional requirements for due process of law, some of which are herein quoted, are binding, and self-executing upon all trial courts. If they are denied or ignored, the proceedings are clearly void.

The motion for new trial was filed in time and during the same term of court that the trial was had. It very clearly and repeatedly called the trial court's attention to his denial of appellant's constitutional rights. Later and before ruled upon it was supported by the affidavit of O. B. Hanger, a reputable attorney of the bar of this state, alleging in substance that the trial judge had told affiant, that on the day of the trial appellant asked for a continuance of the case until such time as he could secure an attorney and prepare for his defense, which request was denied on the ground that appellant had already had sufficient time to get an attorney. Appellant then asked the court to appoint an attorney for him. This request was denied "on the grounds that the court did not intend for the taxpayers of Jackson County to employ coun-

sel to represent defendant." He further states in the affidavit that the "Judge . . . at all times had personal knowledge of defendant's requests and the rulings that were made thereon," although said court's records failed to disclose that any such requests were made by said defendant in open court, nor does its records show the court's rulings that were made on said defendant's requests.

If the facts set forth in the attorney's affidavit are not true, the trial judge had full knowledge of their falsity, and it was his right and duty to take immediate action not only to clarify the record in this case, but to punish and discipline the offending affiant. As an officer of the court the prosecuting attorney had a right and duty to file counter affidavits and produce other evidence in opposition to affiant's charges. He did not do so. Both he and the trial judge have remained silent and inactive with respect to this serious accusation made against them. The affidavit of attorney Hanger remains undisputed in the record and is thereby conceded to be true by both the trial court and the prosecuting attorney. See *East* v. *State, supra. Kuhn* v. *State* (1943), 222 Ind. 179, 187, 198 *et seq.,* 52 N. E. 2d 491.

By the motion for new trial the appellant charges that he has been denied certain constitutional rights. "It is the duty of the trial court and of this court to see to it that those constitutional rights are not improperly denied." *Kuhn* v. *State* (1943), 222 Ind. 179, Dissent of Judge Swaim, 193, 52 N. E. 2d 491.

This is the record in the case as presented to us, in this appeal and upon which we must either affirm or reverse the judgment.

Art. 1, Sec. 13 of the Constitution of Indiana provides:

"In all criminal prosecutions, the accused shall have the right . . .; to be heard by himself *and counsel;* to demand the nature and cause of the accusation against him, and to have a copy thereof; . . . and to have compulsory process for obtaining witnesses in his favor." (My italics.)

The 6th Amendment of the Constitution of the United States provides:

"In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation; . . . to have compulsory process for obtaining witnesses in his favor, *and to have the assistance of counsel for his defense."* (My italics.)

Section 1, Amendment 14 of the Constitution of the United States provides:

". . .; nor shall any state deprive any person of life, liberty or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Long ago in discussing the right of a poor person charged with crime to be represented by counsel this court said:

"It is not to be thought of, in a civilized community, for a moment, that any citizen put in jeopardy of life or liberty, should be debarred of counsel because he was too poor to employ such aid. No court could be respected, or respect itself, to sit and hear such a trial. The defense of the poor, in such cases, is a duty resting somewhere, which will be at once conceded as essential to the accused, to the court and to the public."
*Webb* v. *Baird* (1854), 6 Ind. 13, 18.

Later in discussing an appeal by a poor defendant who was tried for murder and found guilty without counsel assigned him by the court, after discussing

many Indiana cases on the subject that had been decided theretofore this court said:

> "It seems from these, and other authorities, that in this State the law regards the appointment of counsel to defend persons charged with grave crimes, who are too poor to employ counsel on their own behalf, as indispensably necessary to the orderly administration of justice and a fair trial.
>
> "Where a prisoner, without legal knowledge, is confined in jail, absent from his friends, without the aid of legal advice or the means of investigating the charge against him, it is impossible to conceive of a fair trial where he is compelled to conduct his cause in court, without the aid of counsel. His defense may be ever so complete, if properly presented, and yet, if he escapes conviction under the circumstances above given, it must be for want of evidence on the part of the State. Such a trial is not far removed from an ex parte proceeding."

*Hendryx* v. *The State, supra,* on page 269.

And later in *Wilson* v. *State, supra,* presenting a very similar situation where a defendant was found guilty of receiving stolen goods and was represented in the trial by counsel who seemed to be of mediocre ability. The case was appealed by the county "public defender" who frankly admitted that the errors he was presenting were not contained in the motion for new trial. However, this court examined the whole record with care and on page 78 then said:

> "With such a record before us, what is our duty? The easy course would have been to examine the motion for new trial and, having found that the errors relied upon are not mentioned therein, to have affirmed the judgment. For such a decision there are many precedents. But in a case involving an appellant's life or liberty we may not ignore prejudicial errors affecting his constitutional rights when, as here, they are clear-

ly and adequately presented in appellant's brief with supporting bill of exceptions. *The procedural rules that would prevent their consideration must give way to the fundamental principles of due process.* For this course also there are precedents." (My italics.)

Then quoting from *Johnson* v. *Zerbst, Warden* (1937), 304 U. S. 458, 82 L. Ed. 1461, 58 Sup. Ct. 1019, as follows:

"If the accused, however, is not represented by counsel and has not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a jurisdictional bar to a valid conviction and sentence depriving him of his life or his liberty."

And then quoting from *Knox County Council* v. *State ex rel. McCormick* (1940), 217 Ind. 493, 29 N. E. 405, 130 A. L. R. 1427 as follows:

"As pointed out in the beginning, the United States Supreme Court has held that, under the Federal Constitution, *there can be no valid trial. of a criminal case unless the defendant is adequately defended by counsel,* and that a judgment rendered under such circumstances is void. This court has consistently held that, under the Constitution of Indiana, *there can be no valid judgment against a defendant in a criminal case unless he has been offered, and if so desired, provided with, adequate counsel.*"

The conclusion is expressed on page 83 thus:

"But when it is made to appear by a record before us that a so-called trial did not meet the requirements of due process of law, *it is within the power of this court to take cognizance of the errors that resulted in depriving the appellant of his constitutional rights.* When, as here, there has been such a lack of representation as to be equivalent to or worse than no representation whatsoever and as a result thereof the judge misused the op-

portunity thus given to impress upon the jury his view that the defendant was guilty and ought to be convicted, we are left with no alternative but to exercise the power that is in this court to remand the cause for such a trial as will not deny but will afford to the accused the protection guaranteed by our Bill of Rights and the Constitution of the United States." (My italics.)

See also, *Batchelor* v. *State* (1920), 189 Ind. 69, 125 N. E. 773. *Hoy* v. *State* (1947), 225 Ind. 428, 75 N. E. 2d 915.

The three Indiana cases from which we have quoted above and the many cases they cite indicate what the law on due process has been in Indiana from the time it became a state to the present time, and what it must continue to be if our form of government remains republican.

In the appeal, *Powell* v. *State* (1932), 224 Ala. 540, 141 So. 201, the appellant with others was indicted and tried by jury for the crime of rape, found guilty and sentenced to death. A motion for new trial among other things raised three propositions that are presented in the case before us: (1) That the defendants were not given sufficient time to prepare their case for trial. The Supreme Court of Alabama, ruled against this contention because no motion for continuance was filed before the trial. The court said:

"This contention cannot avail the defendants, made for the first time after verdict."

(2) That the representation of the defendants by counsel was merely *pro forma*. The Supreme Court of Alabama dismissed this contention, saying:

"The defendants were represented as shown by the record and pursuant to appointment by the court by Hon. Milo Moody, an able member of

the local bar of long and successful experience in the trial of criminal as well as civil cases.

"We do not regard the representation of the accused by counsel as pro forma."

(3)    The intrinsic record of the trial court affirmatively showed that the defendants on March 31, 1931 "attended by their counsel came personally into open court, and were duly and legally arraigned and pleaded 'not guilty,' . . . and thereupon in open court, in the presence of the defendants, and their attorneys, the court set the trial of the cause for Monday, the 6th day of April, 1931."

Affidavits supporting the motion for new trial were filed, setting forth prejudicial matters occurring at the trial. The Supreme Court of Alabama held, as the opinion in this case substantially holds,

"The bill of exceptions prepared by experienced counsel now appearing is entirely silent as to what did occur. The bill of exceptions made up under the safeguards of law is the method of presenting such matters.

"The trial judge was under duty to consider affidavits, if at all, in the light of his own knowledge of such incidents. If these affidavits did not accord with his own knowledge, it was his duty to disregard them.

"Under all the rules sustaining the trial judge unless error affirmatively appear, his ruling on this question is not presented for review."

On appeal to the Supreme Court of the United States *Powell* v. *Alabama, supra,* reversing the Alabama Supreme Court, Mr. Justice Sutherland, speaking for the court, recognizing that the intrinsic record of the trial court showed that the defendants were represented by counsel and that the Supreme Court of the United States could determine only whether

the denial of the right to counsel contravened the due process of the Fourteenth Amendment to the Federal Constitution went thoroughly into the nature of such representation notwithstanding the intrinsic record of the court to the contrary, and the fact that the affidavits were filed only in aid of the motion for new trial and in an exhaustive opinion among other pertinent things said:

"The prompt disposition of the criminal cases is to be commended and encouraged. But in reaching that result a defendant, charged with a serious crime, must not be stripped of his right to have sufficient time to advise with counsel and prepare his defense. To do that is not to proceed promptly in the calm spirit of regulated justice but to go forward with the haste of the mob."

The court further said:

"What, then, does a hearing include? Historically and in practice, in our own country at least, it has always included the right to the aid of counsel when desired and provided by the party asserting the right. The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more true is it

of the ignorant and illiterate, or those of feeble intellect. If in any case, civil or criminal, a state or federal court were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him, it reasonably may not be doubted that such a refusal would be a denial of a hearing, and, therefore, of due process in the constitutional sense.

". . . All that it is necessary now to decide, as we do decide, is that in a capital case, where the defendant is unable to employ counsel, and is incapable adequately of making his own defense because of ignorance, feeble-mindedness, illiteracy, or the like, it is the duty of the court, whether requested or not, to assign counsel for him as a necessary requisite of due process of law; and that duty is not discharged by an assignment at such a time or under such circumstances as to preclude the giving of effective aid in the preparation and trial of the case. To hold otherwise would be to ignore the fundamental postulate, already adverted to, 'that there are certain immutable principles of justice which inhere in the very idea of free government which no member of the Union may disregard.' Holden v. Hardy, 169 U. S. 366, 42 L. ed. 780, 18 S. Ct. 383, supra. In a case such as this, whatever may be the rule in other cases, the right to have counsel appointed, when necessary, is a logical corollary from the constitutional right to be heard by counsel. Compare Carpenter v. Dane County, 9 Wis. 274; Dane County v. Smith, 13 Wis. 585, 586, 80 Am. Dec. 754; Hendryx v. State, 130 Ind. 265, 268, 269, 29 N. E. 1131; Cutts v. State, 54 Fla. 21, 23, 45 So. 491; People v. Goldenson, 76 Cal. 328, 344, 19 Pac. 161; Delk v. State, 99 Ga. 667, 669, 670, 26 S. E. 752."

See also Anno. 84 A. L. R. 544 et seq.

The similarity of the holding of this court in the majority opinion to the holding of the Supreme Court of Alabama in the Powell case is quite striking. That such holding is wholly erroneous is quite forcibly explained and declared by Mr. Justice Sutherland in the Powell appeal.

The opinion is not only in contravention of the Indiana Constitution, Art. 1, § 13, but it also contravenes the 14th Amendment of the Constitution of the United States. Since the judgment rendered is, under the many decisions of this court and under the decisions of the Supreme Court of the United States, wholly void, it should be reversed and remanded for new trial that a legal trial may be held and a valid judgment rendered.

## DISSENTING OPINION.

EMMERT, J.—The affirmance of this judgment on technical grounds after the defendant had been arbitrarily denied the right to counsel in violation of the Indiana Bill of Rights, is in striking contrast to the long judicial history of this state in which this court by its decisions has stood pre-eminent among the courts of last resort in saving for the accused, whether guilty or innocent, his right to a fair and impartial trial according to American concepts of justice. It is not necessary to restate the unusual facts in this case which have been well presented in the learned opinion of my brother Gilkison.

We are not considering here a contradicted and impeached affidavit of some prisoner who would seek to escape the ennui of prison existence for a short time by forcing the state to have another hearing on some phase of his incarceration, and who was willing to commit perjury to state a cause for relief, since prosecution for this is practically unknown and his term already extends beyond the penalty for perjury.[1] Nor

---

[1] One of the purposes of Ch. 189, Acts 1947, was to provide a deterrent for perjury.

is it some bizarre story of some convicted felon who has deluded himself by his own repeated lies as to how he was denied due process of law. But we do have presented here responsibile representation by two reputable attorneys of this state, one of whom made and filed an affidavit as to what the trial judge said he, sitting as the court, did in arbitrarily denying the defendant's request for counsel, and in forcing the defendant to trial with such expedition that representation by counsel would have been inadequate even if afforded. See *Rice* v. *State* (1942), 220 Ind. 523, 44 N. E. 2d 829; *Hoy* v. *State* (1947), 225 Ind. 428, 75 N. E. 2d 915; *Powell* v. *Alabama* (1932), 287 U. S. 45, 53 S. Ct. 55, 77 L. Ed. 158. If appellant's counsel misrepresented the facts in his affidavit, he was guilty of perjury, he was guilty of contempt of court, and he should be disbarred. No reputable lawyer would misrepresent such matters to a court or violate his duty as an officer of the court to "maintain the respect due to courts of justice and judicial officers."[2] In the absence of any denial on the part of the State it must be assumed that counsel correctly presented the facts on denial of the right to counsel. Counsel in this case also had a duty to their client to see that his constitutional rights were protected, and be it said to their commendation they fearlessly did so in this cause.

The refusal to appoint counsel on the grounds "that the Court did not intend for the tax payers of Jackson County to employ counsel to represent said defendant" is worse than no reason for such a ruling. If the saving of public funds be the only consideration involved, why have any trial at all? Neither the Indiana Bill of Rights nor the Bill of Rights of the Federal Constitution proceed upon the totalitarian

---

[2] Rule 3-21. Oath of Attorneys.

philosophy that the end justifies the means. The trial courts of this state are under an imperative duty to provide a pauper defendant when charged with a crime with adequate legal counsel who shall be reasonably compensated from public funds, and the legislature has no right to curtail this right. *Knox County Council* v. *State ex rel. McCormick* (1940), 217 Ind. 493, 29 N. E. 2d 405, 130 A. L. R. 1427; *State ex rel. White* v. *Hilgemann, Judge* (1941), 218 Ind. 572, 34 N. E. 2d 129. In fact, the error of the trial court in this case will place additional burdens upon the tax payers of Jackson County. The fact that the defendant may have been guilty of some crime does not justify denying him a fair trial. The accused is always presumed to be innocent of the crime charged until he has been convicted upon a fair trial, and the unsurpassed language of Judge Lairy in *Batchelor* v. *State* (1920), 189 Ind. 69, 125 N. E. 773, declared principles for free government from which this court should never deviate:

". . . Our law is no respecter of persons. The rights of just and upright citizens are not more sacred in the eyes of the law than the rights of the poorest and meanest citizens of the state. The safeguards erected by the Constitution are intended to protect the rights of all citizens alike. They protect the rights of the guilty as well as those of the innocent. The court cannot give its sanction to the conviction of any person accused of crime where the proceedings on which the judgment is based show the denial of a right to which the defendant was entitled under the Constitution. Such judicial sanction, in any case, would destroy the efficacy of the constitutional safeguards to protect the rights of all citizens of the state." (pp. 84, 85.)

The defendant in this case is still presumed innocent because the defendant was not tried by due process of

law, and in such cases the court loses jurisdiction to enter any valid judgment. *Knox County Council* v. *State ex rel. McCormick* (1940), 217 Ind. 493, 29 N. E. 2d 405, 130 A. L. R. 1427.

Section 12 of Article 1 of the Constitution of Indiana provides:

> "All courts shall be open; and every man, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. . . ."

The next section gives the accused the right to be heard by himself and by counsel.[3] Is this court to put on judicial blinders and permit an order book entry, that the defendant "elects to represent himself in this cause, without the aid of counsel, and requests a trial by Jury and announces ready for trial," to preclude an examination by this court as to what actually happened in open court as disclosed by the uncontradicted affidavit of an officer of the court and of this court, under a solemn duty to protect the integrity of every court in which he may practice, containing the uncontradicted admissions of the trial judge, which as a matter of law, revealed not only that the defendant did not waive representation by counsel, but that he was positively denied representation by counsel? To do so would permit judicial tyranny in the trial of every criminal cause. The constitutional guarantees of liberty and equal justice under the law are self

---

[3] "In all criminal prosecutions, the accused shall have the right to a public trial, by an impartial jury, in the county in which the offense shall have been committed; to be heard by himself and counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face, and to have compulsory process for obtaining witnesses in his favor." Section 13, Article 1, Constitution of Indiana.

executing. *Webb* v. *Baird* (1854), 6 Ind. 13; *Hendryx* v. *The State* (1891), 130 Ind. 265, 29 N. E. 1131; *Knox County Council* v. *State ex rel. McCormick* (1940), 217 Ind. 493, 29 N. E. 2d 405, 130 A. L. R. 1427; 12 C. J., § 115, p. 733. They are not to be destroyed by any legal fiction that court records are conclusive as to facts when undisputed facts reveal such records are erroneous. See *Marino* v. *Ragen* (1947), 332 U. S. 561, 68 S. Ct. 240, 92 L. Ed. 203.

This court has many times investigated the circumstances under which pleas of guilty were accepted or trials conducted, and in spite of the presumption of regularity, if upon the facts it appeared that the accused had been denied adequate representation by counsel, relief was granted. *Batchelor* v. *State* (1920), 189 Ind. 69, 125 N. E. 773; *Bielich* v. *State* (1920), 189 Ind. 127, 126 N. E. 220; *Dobosky* v. *State* (1915), 183 Ind. 488, 109 N. E. 742; *Mislik* v. *State* (1915), 184 Ind. 72, 110 N. E. 551; *Sanchez* v. *State* (1927), 199 Ind. 235, 157 N. E. 1; *Rhodes* v. *State* (1927), 199 Ind. 183, 156 N. E. 389. If the facts contained in the affidavit were not true, it was the duty of the state to have filed a counter-affidavit setting forth the true facts. In the absence of this counter-affidavit, and in spite of the order book entry there is no other conclusion to be reached than that the defendant's constitutional rights were grossly violated.

The defendant in this case also filed a motion for nunc pro tunc entry to correct the record.

"A party to a judicial proceeding is entitled as a matter of right to have the record correspond to the facts and obviously has a right that the presiding judge correct an inaccurate record whenever an inaccuracy materially prejudices his interests. It is the recognized rule of this state that a court has the inherent power to correct its own

records on its own motion and is, of course, under a solemn duty to do so. . . ." *State ex rel. Eggers* v. *Branaman* (1932), 204 Ind. 238, 243, 224, 183 N. E. 653, 655.

Under this authority if the defendant had filed a petition in this court to mandate the trial court to correct the record, it would have been the duty of this court to see that it was corrected. There is no reason why a cause may not be reversed for failure to correct the record when the matter is brought to our attention upon appeal when a defendant has been deprived of his liberty without due process of law under our Bill of Rights.

The appellant's brief does not properly assign error that the denial of counsel was a violation of the Federal Constitution. In appeals of this nature there has been a great deal of confusion concerning a proper assignment of error that the rights of the accused under the Federal Constitution were violated. This court is bound by the Federal Constitution the same as it is by the Constitution of Indiana, but very important procedural results follow as a consequence of an improper assignment of the violation of federal rights. The confused situation may have resulted in part from some of the language of the decisions of this court, which have not clearly distinguished between a violation of the Sixth Amendment by federal action, and a violation of the Fourteenth Amendment by some state action.

The appellant's brief charges that the denial of counsel was a violation of the Sixth Amendment to the Federal Constitution. This presents no federal question for determination by this court, since the first ten amendments are not a limitation upon state action. *Barron* v. *Mayor and City Council of Baltimore*

(1833), 7 Peters 243, 8 L. Ed. 672; *Loftus* v. *Illinois* (1948), 334 U. S. 804, 68 S. Ct. 1212, 92 L. Ed. 1294; *Foster* v. *Illinois* (1947), 332 U. S. 134, 67 S. Ct. 1716, 91 L. Ed. 1955. When a federal constitutional question is not raised or considered in this court, its decision will not be reviewed by the United States Supreme Court. *Wade* v. *Mayo* (1948), 334 U. S. 672, 68 S. Ct. 1270, 92 L. Ed. 1246; *Loftus* v. *Illinois* (1948), 334 U. S. 804, 68 S. Ct. 1212, 92 L. Ed. 1294.

It is the due process clause of the Fourteenth Amendment that is violated by a state court when an accused is denied the right to counsel, and this is the error that must be assigned if this court be required to consider the federal question. The fundamental and inherent concepts of liberty and justice which are embodied in the Bill of Rights to the Federal Constitution become a part of due process of law under the Fourteenth Amendment. *Gitlow* v. *New York* (1925), 268 U. S. 652, 45 S. Ct. 625, 69 L. Ed. 1138; *Powell* v. *Alabama* (1932), 287 U. S. 45, 53 S. Ct. 55, 77 L. Ed. 158, 84 A. L. R. 527. In many cases the protections afforded to the individual under the Fourteenth Amendment are much broader than the exact language embodied in the Bill of Rights of the Federal Constitution. *Everson* v. *Board of Education* (1947), 330 U. S. 1, 67 S. Ct. 504, 91 L. Ed. 711, 168 A. L. R. 1392; *McCollum* v. *Board of Education* (1948), 333 U. S. 203, 68 S. Ct. 461, 92 L. Ed. 451; *Pennekamp* v. *Florida* (1946), 328 U. S. 331, 66 S. Ct. 1029, 90 L. Ed. 1295.

The denial of counsel in this case came at the trial, and therefore was properly raised by the motion for a new trial. The majority opinion denies relief. Unless present precedents on coram nobis be overruled,

the appellant has no remedy by this procedure, and even if this remedy could be sought, the same issue on the order book entry would be presented. There would be no logic in holding an order book entry conclusive on appeal from the judgment of conviction and not conclusive on a proceeding for a writ of error coram nobis.[4] A petition for a writ of habeas corpus in the state court is not an adequate remedy. *Potter* v. *Dowd, Warden* (7th Cir. 1944), 146 F. 2d 244. He has been denied "remedies by due course of law" as required by § 12 of Article 1 of the Constitution of Indiana. In the interest of orderly administration of justice the Indiana courts should correct their own errors and not force an accused person to go before the United States District Court in a habeas corpus proceeding to obtain relief under the due process clause of the Fourteenth Amendment, when he has been deprived of representation by counsel in violation of § 13 of Article 1 of the Constitution of Indiana. If and when this matter is presented to the proper United States District Court, the order book entry purporting to show waiver of counsel will not be regarded as conclusive in order to prevent an inquiry into the truth of the matter as to what in fact happened at the time of trial. *Marino* v. *Ragen, Warden* (1947), 332 U. S. 561, 68 S. Ct. 240, 92 L. Ed. 203. Nor should it in this court.

Since *Gitlow* v. *New York, supra,* the courts of this state are not free to make their own mistakes on issues involving a fair trial for an accused under due process of law, and until the appeal in this cause was

---

[4] "The exhaustion of but one of several available [state] alternatives is all that is necessary," before filing a petition for habeas corpus in the U. S. District Court. *Wade* v. *Mayo* (June 14, 1948), 334 U. S. 672, 68 S. C. 1270, 92 L. Ed. 1246.

decided the Constitution, statutes and precedents of this state afforded full protection.

The judgment should have been reversed.